# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRIAN CLARK, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 12-13 |
| ) | |
| v. ) | District Judge Kim R. Gibson |
| ) | Magistrate Judge Cynthia Reed Eddy |
| CAMBRIA COUNTY PRISON; ET AL., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss filed by the Medical Defendants (ECF No. 30) be granted and that the Motion to Dismiss filed by the County Defendants (ECF No. 33) be granted.

**II.  REPORT**

Plaintiff, Brian Clark, is an inmate currently housed at the Cambria County Prison (CCP) located in Ebensburg, Pennsylvania. On January 25, 2012, he commenced this action by filing a complaint pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 complaining about religious accommodations, medical treatment, available reading materials, and the available grievance procedures. On March 2, 2012, Plaintiff filed an Amended Complaint against Cambria County Prison, Deputy Warden Ragala, Deputy Warden Smith, John J. Prebish, Jr., and Primecare Medical, Inc. Following service of the Amended Complaint, Defendant Primecare filed a Motion to Dismiss (ECF No. 18). On April 4, 2012, this Court ordered that, in accordance with the directive set forth by the Court of Appeals for the Third Circuit in <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002), Plaintiff was given leave to file

another amended complaint in this action no later than April 27, 2012 (ECF No. 22). On April 19, 2012, Plaintiff filed his second Amended Complaint naming Cindy Cunningham as an additional defendant (ECF No. 23).

On May 2, 2012, Defendants Primecare and Cunningham (the Medical Defendants) filed a Motion to Dismiss (ECF No. 30) and Brief in Support (ECF No. 31). On May 18, 2012, Defendants CCP, Prebish, Ragala and Smith (the County Defendants) filed a Motion to Dismiss (ECF No. 33) and Brief in Support (ECF No. 34). On June 18, 2012, Plainitff filed responses in opposition to the motions to dismiss (ECF Nos. 38 & 39). On July 20, 2012, the County Defendants filed Reply Brief (ECF No. 41) to which Plaintiff filed a Sur-Response on July 30, 2012 (ECF No. 42). For the reasons set forth below, the pending Motions to Dismiss should be granted.

### A. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Factual

allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. *See also* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

A court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the *pro se* litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir.2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247–48 (3d Cir.1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at

688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378, (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### B. Plaintiff's Allegations

In his second Amended Complaint, Plaintiff avers that he is a Jehova's Witness. On August 15, 2011, he spoke to the prison's chaplain and was told that specific services for Jehova's Witnesses were unavailable. When Plaintiff asked the block officer for a grievance, he was told that this was not a grievable issue. Plaintiff then wrote request slips to Deputy Warden Smith and Deputy Warden Ragala but never received a response from either person.

Next, Plaintiff complains that inmates are denied meaningful access to reading materials in that each housing unit is provided individually with a very limited selection of books and subjects. Furthermore, CCP does not provide newspapers or periodicals so that its inmates may keep up with current events. When Plaintiff the block officer about obtaining more books he was told that "this is the selection." When Plaintiff asked the block officer for a grievance, he was denied. Plaintiff then wrote request slips to Deputy Warden Smith and Deputy Warden Ragala but never received a response from either person.

Plaintiff further complains about the lack of educational opportunities. When he inquired about this issue, he was told by counselor Hombake that, due to budget cuts, there are no educational opportunities available at this institution. Plaintiff asked for a grievance and was denied. Plaintiff wrote request slips to Deputy Warden Smith and Deputy Warden Ragala and never received a response from either person. Plaintiff claims that while there is a grievance

4

procedure at the CCP, inmates are denied grievances for any reason other than medical services.

Finally, Plaintiff claims that he submitted a Sick Call Request to the medical department at CCP on August 5, 2011, seeking a knee brace and anti-inflamitory medication for an alleged chronic knee injury. Plaintiff baldy alleges that he previously was prescribed a knee brace by several physicians' assistants and doctors at SCI Cresson without any elaboration as to specific dates or diagnoses of his knee. Several days later, Plaintiff was seen by Physician Assistant Cindy Cunningham who discontinued Motrin treatment and refused to prescribe a knee brace. During the visit, Plaintiff explained that he needed a knee brace to help prevent further aggravation of the injury and to help reduce pain caused by the injury. Plaintiff filed a grievance, which was denied leaving him in continued pain and in danger of causing further injury to his knee.

As relief, Plaintiff asks the Court to order Defendants to offer services for Jehova's Witnesses, to offer more meaningful access to periodicals to keep up with current events, to provide both educational and vocational training courses for inmates, to provide inmates with easier access to the grievance forms necessary to utilize the grievance system and to continue with an established medical treatment plan when there is a positive result from said plan. Alternatively, Plaintiff requests that the Court order his transfer to SCI Cresson where all of these things currently are provided.

### C. Liability under 42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person

5

acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

1. Religious Accomodation

In his second Amended Complaint, Plaintiff avers that he is a Jehova's Witness and that the CCP does not have Jehova's Witness religious services. Plainitff claims that this failure violates his rights as protected by the First Amendment and seeks an Order from this Court commanding CCP to offer services for Jehova's Witnesses.

The First Amendment provides as follows.

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend. I.

The Supreme Court has recognized that the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom. Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972). *See also* O'Lone v. Shabazz, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, ... including its directive that no law shall prohibit the free exercise of religion.") (citations omitted). However, in order to state a violation of the right to exercise one's religion, a plaintiff must allege a "substantial burden" on the exercise. *See, e.g.*, Thomas v. Review Bd., 450 U.S. 707, 718 (1981); Wisconsin v. Yoder, 406 U.S. 205, 218 (1972). Moreover, although inmates retain certain protections afforded by the

First Amendment, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (quotations omitted). While the federal courts must take cognizance of valid constitutional claims of prison inmates, the Supreme Court repeatedly has cautioned that the task of prison administration has been committed to the responsibility of the legislative and executive branches of government; federal courts should be reluctant to second guess these authorities. *See, e.g.*, Turner v. Safley, 482 U.S. 78, 84 (1987); Shabazz, 482 U.S. at 353.

The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden. Hernandez v. Commissioner of Internal Revenue, 490 U.S. 680, 699 (1989) (internal citations omitted). At issue here is whether Petitioner had a clearly established right under the First Amendment to separate religious services for Jehova's Witnesses. The Supreme Court has stated that "[a] special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972). "The requirement that a state interpose no unreasonable barriers to the free exercise of an inmate's religion cannot be equated with the suggestion that the state has an affirmative duty to provide, furnish, or supply every inmate with a clergyman or religious services of his choice." Gittlemacker v. Prasse, 428 F.2d 1, 4 (3d Cir. 1970).

In the case at bar, Plaintiff merely complains that the CCP does not have separate Jehova's Witness religious services. He does not complain he is not allowed to associate with

7

other Jehova's Witnesses; nor does ne complain that he is not allowed Jehova's Witness texts or other religious items associated with his religion. It is not the responsibility of the prison to provide Plaintiff with access to others of his faith. Nor is it the responsibility of the CCP to provide services for every faith of every prisoner in its facility. Budgetary constraints constitute a valid penological interest and restricting religious-based services has been held to be rationally related to that interest. *See* Smith v. Kyler, 295 Fed. App'x 479, 481 (3d Cir. 2008) ("We agree that Smith's free exercise rights were not violated by the DOC's policy to provide Chaplains for only the largest major faith groups and to prohibit group worship in the absence of an approved, volunteer Faith Group Leader. The District Court correctly noted that the DOC has a legitimate interest in managing limited financial resources and in maintaining prison security.*")*; Boretsky v. Corzine, Civil No. 08- 2265, 2011 WL 2610370, at *13 (D.N.J. June 30, 2011) (holding that a Jewish inmate's restriction from congregational services as well as communal activities did not violate his constitutional rights); Palmer v. Rustin, Civil No. 10-0042, 2011 WL 2489820, at *9 (W.D. Pa. June 21, 2011) (dismissing a claim based on denial of right to attend Muslim services); Gould v. Beard, Civil No. 07-0055, 2010 WL 845566, at *6 (W.D. Pa. Jan. 16, 2010) (holding that a prisoner did not have a right to communal Nation of Islam services); Morris–El v. Menei, Civil No. 00-200J, 2006 WL 1455592, at *2–6 (W.D. Pa. May 22, 2006) (denying claim that failure to provide Moorish Science services violated the inmate's right to Free Exercise). *See also* Williams v. Morton, 343 F.3d 212, 217-18 (3d Cir. 2003) (failure to provide Halal meals to Muslim inmates did not violate their free exercise rights); Fraise v. Terhune, 283 F.3d 506, 517-18 (3d Cir. 2002) (restricting literature of Five percenters did not violate free exercise rights).

Although not cited by Plaintiff in any of his complaints, Defendants further discussed this claim as impacted by the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA prohibits the government from imposing a substantial burden on any religious exercise of a person residing in or confined to an institution unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." *Id*. *See also* Cutter v. Wilkinson, 544 U.S. 709, 2114 (2005). A plaintiff-inmate bears the burden to show that a prison institution's policy or official practice has substantially burdened the practice of that inmate's religion. Washington v. Klem, 497 F.3d 272, 278 (3d Cir. 2007). For the purposes of RLUIPA, a substantial burden exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. *Id*. at 280. RLUIPA also does not confer any "privileged status on any particular religious sect, and singles out no bona fide faith for disadvantageous treatment." Cutter, 544 U.S. at 724.

Here, although he was offered the opportunity to do so, Plaintiff has not alleged any action or regulation of the prison which places a substantial burden on the practice of his religion. It may be assumed, in the absence of any allegation to the contrary, that there simply are no other co-religionists of the Plaintiff incarcerated at CCP and/or that there are no Jehovah Witness chaplains available to conduct weekly services on a gratuitous basis. Accordingly, Plaintiff's practice of religion claim fails under both the Constitution and RLUIPA because he has failed to state a claim for which relief may be granted. *Accord* Blackwell v. Madison Parish Correctional

Center, Civil No. 09-0968, 2010 WL 147987, 6 (W.D. La. Jan. 13, 2010).

2. Access to Reading Materials

Plaintiff claims that he has been denied meaningful access to reading materials because the prison does not provide free newspapers and periodicals. There is no constitutional right that inmates have to be provided specific reading materials by the prison. Plaintiff does not allege that he was denied the right to purchase recreational reading materials or to be given such reading materials from family or friends, or even other inmates. He simply alleges that the CCP does not provide gratuitous newspapers and periodicals. A survey of the caselaw on this issue reveals no such right. *See* Regan v. John Doe Individuals of H.C.F., Civ. No. 06-121, 2007 WL 3332037, 13 (D. Hawaii Nov. 9, 2007) (claim dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); Hunnicutt v. Armstrong, 305 F. Supp.2d 175, (D. Conn. 2004) ("Research has revealed no constitutional right to unlimited pleasure reading") *aff'd in part vacated in part on other grounds*, 152 Fed. App'x 34 (2d Cir. 2005); Pippins v. Adams County Jail, 851 F. Supp. 1228, 1233 (C.D. Ill. 1994); *cf.* Beard v. Banks, 548 U.S. 521 (2006) (holding that ban on allowance of reading materials for segregation inmates was reasonably related to the prison's legitimate penological interest of persuading inmates in disciplinary segregation to improve their conduct in order to receive additional privileges).

Although imprisonment does not automatically deprive a prisoner of important constitutional protections, the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere. In reviewing a prison's policies restricting prisoners' access to written materials, courts owe "substantial deference to the professional judgment of prison administrators." Overton v. Bazzetta, 539 U.S. 126, 132 (2003). A prison policy

restricting access to publications is permissible when it is reasonably related to legitimate penological interests and is not an exaggerated response to such objectives. Turner v. Safley, 482 U.S. 78, 87 (1987).

County prisons such CCP do not have unlimited funds and there is no constitutional guarantee that is must use its limited resources to furnish prisoners with free newspapers and periodicals. After all, punishment is a fundamental aspect of imprisonment and prisons may choose to punish inmates by preventing them from participating in some of their favorite recreations. *See* Sandin v. Conner, 515 U.S. 472, 485 (1995) ("[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." (quotation omitted)).

As this claim does not allege any violation of Plaintiff's constitutional rights, Defendants' Motion to Dismiss should be granted as to this claim.

3. Educational Opportunities

Plaintiff further complains about the lack of educational opportunities. Prisoners have no constitutional right to rehabilitation, education, or jobs. This claim invokes the protections of the Due Process Clause of the Fourteenth Amendment. The Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. Meachum v. Fano, 427 U.S. 215, 224 (1976). It shields from arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify either as liberty or property interests. Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). These types of protected interests are not unlimited: the interest must rise to more than an abstract need or desire and must be based on more than a unilateral hope. Rather, an

individual claiming a protected interest must have a legitimate claim of entitlement to it. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (citation omitted).

Thus, the threshold question presented by Plaintiff's claim is whether Defendants' actions impacted a constitutionally-protected liberty interest. A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt, 459 U.S. at 466. A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Interests recognized by the Supreme Court that fall within this category include the revocation of parole, Morrissey, 408 U.S. at 471, and the revocation of probation, Gagnon, 411 U.S. at 778.

The federal courts agree that there is no inherent liberty interest in a prison job or educational opportunities arising from the Due Process Clause. *See, e.g.*, James v. Quinlan, 866 F.2d 627, 629 (3d Cir. 1989); Canterino v. Wilson, 869 F.2d 948, 952–54 (6th Cir. 1989); Baumann v. Arizona Dep't of Corrections, 754 F.2d 841, 846 (9th Cir. 1985) (no constitutional right to jobs and educational opportunities); Lyon v. Farrier, 727 F.2d 766, 769 (8th Cir. 1984); Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (no constitutional right to prison job); Adams v. James, 784 F.2d 1077, 1079 (11th Cir. 1986) (same); Lyon v. Farrier, 727 F.2d 766, 769 (8th Cir. 1984); Madyun v. Thompson, 657 F.2d 868, 874 (7th Cir. 1981) (no constitutional mandate to provide educational, rehabilitative, or vocational programs); Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975) ("We do not believe that an inmate's expectation of keeping a particular

prison job amounts either to a 'property' or 'liberty' interest entitled to protection under the due process clause.").[1] Accordingly, Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest in prison employment or education.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483 (emphasis added). The Pennsylvania federal courts unanimously have held that Pennsylvania prisoners do not have any state created liberty or property interest in work or educational programs. *See, e.g.,* Presbury v. Wenerowicz 472 Fed. .App'x 100, 101 (3d Cir. 2012); McDowell v. Litz, 419 Fed. App'x 149, 152 (3d Cir. 2011); Asquith v. Department of Corrections, 186 F.3d 407, 411 (3d Cir. 1999) (no state created right to work release); Kantamanto v. King, 651 F. Supp.2d 313 (E.D. Pa. 2009). Garcia v. Kimmel, Civil No. 08–1236, 2009 WL 2950628, *12 (W.D. Pa. Sept. 9, 2009) (Pennsylvania does not provide any state created right to education programs in prison); Brooks v. DiGuglielmo, Civil No. 05-4588, 2008 WL 5187529, *7 (E.D. Pa. Dec. 9, 2008) (same). Accordingly, Defendants' Motion to Dismiss should be granted as to this claim.

---

[1] Nor have the federal court recognized any right to education stemming from the Eighth Amendment. See Abraham v. Delaware Dept. of Corrections, 331 Fed. App'x 929, 931 (3d Cir. 2009) ("Prisoners have no constitutional right to rehabilitation, education, or jobs") (citing Rhodes v. Chapman, 452 U.S. 337, 348 (1981)); Flanyak v. Ross, 153 Fed. App'x 810, 812 (3d Cir. 2005); Women Prisoners of Dist. of Columbia Dep't of Corr. v. District of Columbia, 93

4. Grievance Procedures

Plaintiff next complains about the grievance program at the CCP. An inmate does not have a constitutionally protected right to a grievance procedure. Caldwell v. Beard, 324 F. App'x 186, 189 (3d Cir. 2009) (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)); Anderson v. Pennsylvania, 196 Fed. App'x 115, 117 (3d Cir. 2006); Rhoades v. Adams, 194 Fed. App'x 93, 95 (3d Cir. 2006) ("the inmate grievance procedures, in themselves, do not confer a liberty interest protected by the due process clause in the inmate grievance procedures."); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). Therefore, Plaintiff cannot maintain a constitutional claim based on his perception that his grievances were not properly processed, investigated, or that the grievance process is inadequate. *See, e.g.*, Heleva v. Kramer, 214 Fed. App'x 244, 247 (3d Cir. 2007) ("[D]efendants' alleged obstruction of prison grievance procedures does not give rise to an independent claim."); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (citing cases from the Fourth, Eighth, Seventh, and Ninth Circuits); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (holding that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state").

5. Medical Treatment

Finally, Plaintiff claims that he received inadequate medical care because Physician Assistant Cindy Cunningham discontinued Motrin treatment and refused to prescribe a knee brace. As a convicted, sentenced prisoner, Plaintiff's claim concerning his medical treatment invokes the protections of the Eighth Amendment, as applied to the states through the Fourteenth Amendment. In order to make out a *prima facie* case that a prison official's actions violate the

---

F.3d 910, 927 (D.C. Cir. 1996).

Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer v. Brennan, 511 U.S. 825 (1994); Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.

The Supreme Court has explained that the first showing requires the court objectively to determine whether the deprivation of the basic human need was "sufficiently serious."

> [E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.

Hudson v. McMillan, 503 U.S. 1, 9 (1992) (internal citation omitted).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Id. Accord Wilson, 501 U.S. at 297. Recently, the Supreme Court clarified the proper test for determining when correctional officials act with "deliberate indifference."

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference . . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

15

Farmer, 511 U.S. at 837. Furthermore, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id. Thus, a prison official may be held liable under the Eighth Amendment only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

What is required to prove an Eighth Amendment violation "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992). To state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court objectively to determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of permanent injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

In the case at bar, Plaintiff claims that he received inadequate medical care for his knee problem. A plaintiff alleging constitutionally inadequate medical treatment must allege a

"serious medical need" sufficient to satisfy the objective component of the test. Boring v. Kozakiewicz, 833 F.2d 468 (3d Cir. 1987). In Boring, the Court of Appeals for the Third Circuit concluded that, with respect to an ulnar nerve injury, knee injury, and migraine headaches, a fact finder would not be able to determine that the condition was "serious" because the need for treatment did not appear to be "acute." Id. In so concluding, the Court noted that "courts will not 'second-guess the propriety or adequacy of a particular course of treatment [which] remains a question of sound professional judgment.'" Id. (quoting Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)).

Here, despite filng two amended complaints, Plaintiff has not made any allegation to substantiate the existence of any serious medical need with regard to his knee. As with the medical complaints in Boring, a lay person would not be able to conclude from Plaintiff's allegations that he suffered from a serious medical need.[1] See Rodriguez v. Kincheloe, 967 F.2d 590 (Table), 1992 WL 144610 (9th Cir. June 26, 1992) (holding that prisoner's eighth amendment claim failed because he failed to offer any evidence that his knee condition was serious or that prison officials were deliberately indifferent to his medical needs).

---

1. See Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir. 1995) (inmate failed to submit sufficient evidence that defendants ignored an acute or escalating situation or that delays adversely affected his prognosis, given the type of injury in this case); Beyerbach v. Sears, 49 F.3d 1324 (8th Cir. 1995) (inmate failed to present any verifying medical evidence to establish the objective component of his claim); Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (an inmate complaining that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to succeed); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990) (to objectively determine whether a "serious deprivation" of a basic human need has occurred (*i.e.*, whether prison conditions to rise to the level of unconstitutional punishment), there must be evidence of a serious medical and emotional deterioration attributable to the challenged condition).

Moreover, even if the court were to conclude that Plaintiff had demonstrated the existence of a serious medical need, he has failed to demonstrate that Defendants were deliberately indifferent to it. The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997). The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified." *Id*. Moreover, deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment. Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. Estelle v. Gamble, 429 U.S. 97, 104 (1978); Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).

In the case at bar, Plaintiff has set forth no allegation that any Defendant acted with deliberate indifference to a serious medical need for purposes of imposing liability under the Eighth Amendment's prohibition against cruel and unusual punishment. Specifically, there is nothing that suggests that any Defendant knew that Plaintiff faced a substantial risk of serious harm by failing to give him a knee brace based simply on his allegation that he had been prescribed one sometime in the past. Thus, Defendants' Motion may be granted on the basis that Plaintiff's allegations fail to state a claim upon which relief may be granted under 42 U.S.C.

§ 1983. *See* Bonneville v. Basse, Civil No. 2:12-200, 2012 WL 4853069, 2 (N.D. Tex. Oct. 12, 2012) ("The fact that defendant Dr. Basse has not provided plaintiff with a knee brace or muscle relaxants, which plaintiff thinks he needs, does not support a claim of deliberate indifference to a serious medical need.").

6. Transfer

As to his request for a transfer, an inmate has no inherent constitutional right to be confined at any particular facility, whether it be inside the state of conviction, or outside that state. Olim v. Wakinekona, 461 U.S. 238, 251 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976); Jerry v. Williamson, 211 Fed. App'x 110, 112 (3d Cir. 2006). Moreover, the Pennsylvania code clearly states that an inmate does not have a right to be housed in a particular facility. 37 Pa.Code § 93.11(a). As Plaintiff has no constitutional right to be incarcerated in a particular institution, his requested relief for transfer out of CCP to must be denied.

## III. CONCLUSION

For the reasons stated above, it is respectfully recommended that the Motion to Dismiss filed by the Medical Defendants (ECF No. 30) be granted and that the Motion to Dismiss filed by the County Defendants (ECF No. 33) be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. NO EXTENSIONS WILL BE GRANTED. Failure to file timely objections will constitute a waiver of any appellate rights.

November 15, 2012   /s Cynthia Reed Eddy
　　　　　　　　　　　　　　　　　　Cynthia Reed Eddy
　　　　　　　　　　　　　　　　　　United States Magistrate Judge


Brian Clark
11-01921
Cambria County Prison
425 Manor Drive
Ebensburg, PA 15931